**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1243**

UNITED STATES OF AMERICA EX REL COMPLIN,

Plaintiff - Appellant,

v.

NORTH CAROLINA BAPTIST HOSPITAL; THE CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY, d/b/a Carolinas HealthCare System,

Defendants - Appellees.

Appeal from the United States District Court for the Middle District of North Carolina at Greensboro. William L. Osteen, Jr., District Judge. (1:09-cv-00420-WO-LPA)

Submitted: May 18, 2020                                      Decided: June 15, 2020

Before MOTZ, KEENAN, and HARRIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Wm. Paul Lawrence, II, WATERS & KRAUS, LLP, Middleburg, Virginia; Chet Rabon, Jr., RABON LAW FIRM, PLLC, Charlotte, North Carolina, for Appellant. Sandra L.W. Miller, Catherine F. Wrenn, Brent F. Powell, WOMBLE BOND DICKINSON (US) LLP, Greenville, South Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal arises from relator Joseph Vincoli's False Claims Act *qui tam* action against two hospitals. Vincoli alleges, first, that the hospitals knowingly submitted fraudulent cost reports to Medicare, failing to properly disclose or reduce the costs they reported for healthcare benefits provided to their own employees. He also claims that in response to the filing of his *qui tam* action, one of those hospitals – his former employer – retaliated against him by pressuring a subsequent employer to fire him.

The district court dismissed Vincoli's complaint under Federal Rule of Civil Procedure 12(b)(6). With respect to the fraud claim, the district court held that Vincoli had failed to plead sufficiently the requisite scienter under the False Claims Act – that is, that the hospitals submitted the allegedly false cost reports *knowing* that they were false. Nor, the district court found, had Vincoli alleged facts that could establish a causal link between his False Claims Act action and his firing years later by a new employer, as required to make out a retaliation claim.

We agree with the district court on both counts and affirm its judgment.

## I.

Relator Joseph Vincoli[1] worked at North Carolina Baptist Hospital ("NCBH") from July 2006 until he was fired in October 2007. The circumstances of that discharge are not

---

[1] Vincoli is the real plaintiff and relator in this case. Complin, a Delaware general partnership, was created by Vincoli and his former counsel to serve as the nominal plaintiff in this case before Vincoli was revealed to be the real plaintiff.

at issue in this case:  In May 2008, Vincoli entered into a settlement agreement with NCBH, releasing any claim he might have had against NCBH prior to that date.

Approximately a year later, in June 2009, Vincoli initiated this *qui tam* action under the False Claims Act ("FCA"), alleging Medicare fraud by NCBH and the Charlotte-Mecklenburg Hospital Authority (collectively, "the Hospitals").  For six years, the lawsuit was held under seal while the government investigated Vincoli's claims and ultimately declined to intervene.  In February 2016, Vincoli filed the second amended complaint now at issue, asserting two claims relevant here:  first, that the Hospitals engaged in Medicare fraud, in violation of the FCA, 31 U.S.C. § 3729(a)(1)(A)–(B) (the "fraud claim"); and second, that after learning of this action, Vincoli's former employer NCBH retaliated against him, also in violation of the FCA, 31 U.S.C. § 3730(h) (the "retaliation claim").[2]

The gist of Vincoli's fraud claim is as follows.  The Hospitals provide medical care and services to their own employees through self-funded health benefits plans, administered by a jointly owned entity, MedCost Benefit Services, LLC ("MedCost").  According to Vincoli, the Hospitals' plans are subject to the "Related-Party Rule," *see* 42 C.F.R. § 413.17, which requires hospitals to report their costs for providing care to their own employees as "related-party transactions," and to submit for Medicare reimbursement only their actual, out-of-pocket costs rather than the amount charged.  There is an exception to the Related-Party Rule for plans administered by a third-party administrator ("TPA"),

---

[2] Vincoli also alleged a violation of state law in connection with his retaliation claim, but that state-law claim is not at issue on appeal.

but the Hospitals may not invoke that exception, Vincoli alleges, because MedCost does not qualify as a TPA and instead functions only as a plan supervisor with ministerial duties.[3] By submitting cost reports to Medicare that did not comply with the Related-Party Rule, Vincoli finishes, the Hospitals "knowingly present[ed]" to the United States "a false or fraudulent claim," in violation of the FCA. *See* 31 U.S.C. § 3729(a)(1)(A).

With respect to retaliation, Vincoli alleges that his former employer NCBH became aware in 2011, four years after he left NCBH, that he had filed this *qui tam* action. And then, Vincoli asserts, NCBH retaliated against him, convincing his subsequent employer, the North Carolina Department of Public Safety, to fire him two years later, in 2013.

In a thorough and well-reasoned opinion, the district court granted the Hospitals' motions to dismiss Vincoli's complaint with prejudice, adopting the recommendation of a magistrate judge and overruling Vincoli's objections after de novo review. *See United States ex rel. Complin v. N. Carolina Baptist Hosp.*, No. 1:09-cv-420-WO-LPA, 2019 WL 430925, at *1 (M.D.N.C. Feb. 4, 2019).

The court began with Vincoli's fraud claim and the FCA's "rigorous" scienter requirement. *Id.* at *10 (citing *Universal Health Servs., Inc. v. United States*, 136 S. Ct.

---

[3] Specifically, the Related-Party Rule provides that absent an exception, "costs applicable to services, facilities, and supplies furnished to the provider by organizations related to the provider by common ownership or control are includable in the allowable cost of the provider at the cost to the related organization. However, such cost must not exceed the price of comparable services, facilities, or supplies that could be purchased elsewhere." 42 C.F.R. § 413.17(a). The exception at issue here applies "if the provider demonstrates by convincing evidence . . . that . . . [t]he supplying organization is a bona fide separate organization," 42 C.F.R. § 413.17(d)(1)(i), and meets certain other outlined requirements, *see* 42 C.F.R. § 413.17(d)(1)(ii)–(iv).

4

1989, 2002 (2016)). The FCA imposes liability only when a false claim is "knowingly" presented, 31 U.S.C. § 3729(a)(1)(A) – a scienter element that requires, as the court explained, "actual knowledge" of falsity "or deliberate ignorance or reckless disregard of the truth or falsity of the information" provided. *Complin*, 2019 WL 430925, at \*10; *see* 31 U.S.C. § 3792(b)(1). "[H]onest mistakes or incorrect claims submitted through mere negligence" are not enough. *U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 728 (4th Cir. 2010) (internal quotation marks omitted).

After reviewing the magistrate judge's recommendation, the district court determined that Vincoli had not plausibly alleged the requisite scienter. "[C]onclusory and unsupported" charges of knowing falsity, the court explained, are not enough, *Complin*, 2019 WL 430925, at \*9 (citations omitted), and Vincoli's complaint lacked any specific factual allegations that could support a finding of scienter. Instead, Vincoli asked the court to infer scienter from the alleged regulatory violation itself: Because the Hospitals were sophisticated entities presumed to know the law, Vincoli argued, their failure to comply with the Related-Party Rule could only have been "knowing." *See United States ex rel. Complin v. N. Carolina Baptist Hosp.*, No. 1:09-cv-420-WO-LPA, 2016 WL 7471311, at \*14, \*17 (M.D.N.C. Dec. 28, 2016) (Magistrate Judge Recommendation), *report and recommendation adopted*, 2019 WL 430925 (M.D.N.C. Feb. 4, 2019). But like the magistrate judge, the district court rejected that position. Even assuming there had been a violation of the Related-Party Rule, the court explained, "that fact alone is not sufficient to plausibly allege scienter in the FCA context." *Complin*, 2019 WL 430925, at \*10. And that was especially true given regulatory "ambiguity," thoroughly canvassed by the

5

magistrate judge, as to whether the Related-Party Rule applied to the transactions in question or whether MedCost was a TPA for purposes of the Rule's exception. *Id*.

The district court also dismissed Vincoli's retaliation claim after making a de novo determination that accorded with the magistrate judge's recommendation. To make out a claim under the FCA's anti-retaliation provision, an employee must show that he was retaliated against "in the terms and conditions of employment *because of*" protected activity undertaken in connection with a *qui tam* action. 31 U.S.C. § 3730(h)(1) (emphasis added); *see U.S. ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 200 (4th Cir. 2018) (employee must show that "employer took adverse action against him *as a result*" of acts in furtherance of a *qui tam* suit (emphasis added) (citations omitted)).[4] The district court agreed with the magistrate judge that Vincoli's complaint failed to allege any non-conclusory facts that could establish the necessary causal link between NCBH's alleged discovery of Vincoli's *qui tam* action in 2011 and Vincoli's termination in 2013, a full two years later, by his new employer, the state of North Carolina. *See Complin*, 2019 WL 430925, at *10; *Complin*, 2016 WL 7471311, at *22–*24 (Magistrate Judge

---

[4] The FCA's anti-retaliation provision states:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1).

6

Recommendation). The district court also held, in the alternative, that § 3780(h) does not provide a remedy for post-termination retaliation – that is, NCBH's alleged retaliation against Vincoli only *after* Vincoli had left its employ. *See Complin*, 2019 WL 430925, at *10.

The district court thus dismissed Vincoli's second amended complaint with prejudice, and this timely appeal followed.

## II.

We review de novo a district court's dismissal of a complaint for failure to state a claim, accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiff. *See U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014). But like the district court, "we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (internal quotation marks omitted). On appeal, the parties largely advance the same arguments presented to the district court. And substantially for the reasons given by the district court, we affirm.

As to Vincoli's fraud claim, we agree with the district court that Vincoli failed to adequately plead scienter.[5] Scienter is a "rigorous" and key element of an FCA claim.

---

[5] Contrary to Vincoli's argument on appeal, the district court did not err in deciding the issue of scienter at the Rule 12(b)(6) motion-to-dismiss stage. *See, e.g.*, *U.S. ex rel.*

*Universal Health Servs.*, 136 S. Ct. at 2002; *see* 31 U.S.C. § 3729(A)(1)(a) (making liable any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval").  The disregard of a federal regulation, by itself, does not create liability under that Act.  *See U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 379–81 (4th Cir. 2015).  Instead, a relator must "plausibly allege" all of the elements of an FCA claim, including scienter – that is, that a fraud was committed with "actual knowledge, deliberate ignorance, or reckless disregard of [] truth or falsity."  *Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 700, 703 (4th Cir. 2014) (citing 31 U.S.C. § 3729(a), (b)(1)).

Nor is it enough, as the district court explained, that Vincoli made a general and conclusory allegation that the Hospitals "knowingly" submitted false claims.  *Complin*, 2019 WL 430925, at *9; J.A. 93 (second amended complaint).  An FCA plaintiff must do more, "set[ting] forth specific facts that support an inference" of scienter.  *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (citation omitted).  And that is what is missing from Vincoli's complaint here.  Vincoli does not allege any facts from which one could infer knowledge of a false claim:  that the Hospitals' employees had conversations about regulatory violations, for instance, or that the Hospitals instructed their employees to ignore concerns about potential violations, or anything else to indicate that the Hospitals were aware even of the potential for a violation of the Related-Party Rule.  *Cf., e.g.*, *United States v. Brookdale Senior Living Communities, Inc.*, 892 F.3d 822,

---

*Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 703 (4th Cir. 2014) (affirming Rule 12(b)(6) dismissal of complaint in part for failure to plead scienter as required by the FCA).

837–38 (6th Cir. 2018) (holding such factual allegations sufficient to support inference of scienter); *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1175 (9th Cir. 2006) (same).

Vincoli argues, as he did before the district court, that this gap can be filled by inferring scienter from the alleged regulatory violation itself. But as discussed above, not every regulatory violation will give rise to FCA liability, because the FCA does not punish "honest mistakes or incorrect claims submitted through negligence." *Drakeford*, 792 F.3d at 380 (internal quotation marks omitted); *see U.S. ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 287–88 (D.C. Cir. 2015) ("Consistent with the need for a knowing violation, the FCA does not reach an innocent, good-faith mistake about the meaning of an applicable rule or regulation."). So even assuming non-compliance with the Related-Party Rule, as the district court explained, that would not by itself give rise to an inference of scienter. *See Complin*, 2019 WL 430925, at \*10.

Like the district court and magistrate judge, we think that is especially true here, where there is regulatory ambiguity as to whether MedCost may be treated as a third-party administrator, qualifying the Hospitals for the exception to the Related-Party Rule, and even whether that Rule applies in the first place to the transactions in question. That is not to say – and we do not understand the district court to have held – that a violation of an ambiguous regulation never can give rise to FCA liability. *See Purcell*, 807 F.3d at 288 (evidence that a defendant was "warned away" from its interpretation of an ambiguous regulation may suffice to show "knowledge" of falsity under FCA). But "establishing even the loosest standard of knowledge, i.e., acting in reckless disregard of the truth or falsity of

9

the information, is difficult when falsity turns on a disputed interpretive question." *Id.* (internal quotation marks omitted). We agree with the district court that under these circumstances, particularly, the Hospitals' alleged violation of the Related-Party Rule does "not compel an inference that [the Hospitals] acted with knowledge, deliberate ignorance, or reckless disregard." *Complin*, 2019 WL 430925, at \*10.[6]

We also affirm the district court's dismissal of Vincoli's retaliation claim. As described above, the district court rested its dismissal on two alternative and independent grounds: Vincoli's failure to plead facts that would establish the necessary causal nexus between his protected activity and his termination by his new employer in 2013; and its conclusion that the FCA's retaliation provision does not provide a remedy where, as here, the alleged retaliation is against a former rather than current employee. But Vincoli's opening brief takes issue only with the latter determination, and never argues against the

---

[6] On appeal, as before the district court, Vincoli argues that any ambiguity about the application of the Related-Party Rule was resolved by the decision of the Medicare Provider Reimbursement Review Board in *St. Francis Hospital Greenville, South Carolina Provider No.: 42-0023 v. Intermediary BlueCross BlueShield Association/Palmetto Government Benefits Administrators*, 2007 WL 1774634 (P.R.R.B. Apr. 19, 2007). Given the "complex and highly technical regulatory" regime at issue, *Complin*, 2016 WL 7471311, at \*15 (Magistrate Judge Recommendation), we are inclined to agree with the district court and magistrate judge that there remains a decided "lack of clarity" as to application of the Related-Party Rule to the Hospitals here, *Complin*, 2019 WL 430925, at \*10; *see also, e.g.*, *id.* at \*8–\*10 (discussing magistrate judge's intricate analysis of whether MedCost qualifies as a TPA for purposes of the Related-Party Rule exception). More fundamentally, as the district court and magistrate judge explained, the *St. Francis Hospital* decision is non-precedential and non-binding, *see Complin*, 2019 WL 430925, at \*3–\*4, and that kind of non-authoritative guidance generally "is not enough to warn a regulated defendant away from an otherwise reasonable interpretation" of a regulation for purposes of establishing FCA scienter, *Purcell*, 807 F.3d at 290 (citation omitted).

district court's ruling on causation. Vincoli thus has waived any challenge to the district court's causation determination. *See Brown v. Nucor Corp.*, 785 F.3d 895, 918 (4th Cir. 2015) ("Failure of a party in its opening brief to challenge an alternate ground for a district court's ruling . . . waives that challenge." (citation omitted)).

Nor can we discern any ground for questioning the district court's ruling in this regard. As the district court and magistrate judge found, Vincoli failed to plead facts that would causally link NCBH's alleged 2011 knowledge of his protected activity – the filing of the *qui tam* action – to his termination by his subsequent employer in 2013. In the absence of direct evidence of causation, close temporal proximity between protected activity (or an employer's knowledge of protected activity) and an adverse employment action may give rise to an inference of causation. *See, e.g.*, *Grant*, 912 F.3d at 195, 203 (close proximity in timeline of events supported a reasonable inference that employee was fired in retaliation for engaging in protected activity under the FCA). But as the district court held, no such inference arises here, under the circumstances of this case and given the gap of over two years between NCBH's alleged knowledge of Vincoli's *qui tam* action and Vincoli's ultimate termination by a subsequent employer – which leaves Vincoli with no allegations that could establish the necessary causal nexus.[7]

---

[7] Given the district court's unchallenged ruling on causation, we have no occasion to consider the court's alternative holding, and whether the FCA's anti-retaliation provision, 31 U.S.C. § 3730(h), provides a remedy to former employees for post-employment retaliation.

11

Accordingly, we affirm the judgment of the district court.

*AFFIRMED*